UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DTND SIERRA INVESTMENTS LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-12-CV-80-XR |
| § | |
| CITIMORTGAGE, INC., § | |
| § | |
| *Defendant*. § | |

**ORDER**

On this date, the Court considered Defendant CitiMortgage, Inc.'s Motion to Dismiss (docket no. 4).

**Background**

Plaintiff DTND Sierra Investments, LLC ("DTND") filed this lawsuit in state court "to remove cloud and quiet title" to certain real property.  The state court petition seeks "a declaration of the invalidity of Substitute Trustee's Deed and claim by the Defendant CitiMortgage, Inc. in order to quiet title to property in which the Plaintiff has an interest."  The petition alleges the following:

On or about October 12, 2004, Daniel A. Smith executed a Deed of Trust with lender Cornerstone Mortgage Company on property located at 26923 Sparrow Ridge, San Antonio, Texas. Smith later defaulted on his obligations under the Deed of Trust and on payment of Trinity Oaks Homeowners' Association ("TOHOA") assessments for the property.  On April 5, 2011, TOHOA foreclosed on the property and Plaintiff DTND was the high bidder.  Plaintiff recorded the deed in the Bexar County public records.  Citi did not redeem the property during the redemption period

1

provided by Section 209.011 of the Texas Property Code. On July 5, 2011, Citi conducted a foreclosure sale, but allegedly failed to send notices to Plaintiff as required by the Deed of Trust and by statute. On July 13, Citi recorded a substitute trustee's deed.

On January 17, 2012, Plaintiff filed this lawsuit. Plaintiff alleges that the Substitute Trustee's Deed is invalid and is a cloud on Plaintiff's title. Plaintiff contends that Citi had no interest in the property to foreclose because it failed to redeem the property during the statutory redemption period, thus losing its interest in the property before it foreclosed. Plaintiff alleges that even if it had an interest to foreclose on, Citi's failure to give notice of the foreclosure sale invalidates the substitute trustee's sale. Plaintiff prays that the substitute trustee's deed be declared invalid and unenforceable.

Citi removed the case to this Court on January 27, 2012, asserting diversity jurisdiction as the basis for removal. On February 3, Citi moved to dismiss under Rule 12(b)(6). Plaintiff filed a Response, and Citi filed a reply.

**Arguments**

Citi contends that Plaintiff's lawsuit is "fundamentally flawed" because Plaintiff purchased the property subject to its lien. Citi asserts that its lien was superior to the lien held by the HOA, and the HOA's foreclosure did not extinguish Citi's lien. Citi notes that payment of the Note was secured by a vendor's lien and a Deed of Trust, both executed October 11, 2004, in favor of Cornerstone Mortgage Corporation, and these interests were assigned to Citi. Defendant asserts that its lien is superior because the HOA lien is expressly subordinated to purchase-money security interests, such as Citi's. The HOA declaration, the basis of the HOA's power to assess fees and foreclose on the property, expressly provides that HOA assessment liens will be subordinate to "all sums unpaid on a first mortgage lien or first deed of trust lien of record securing sums borrowed for the acquisition

of the Lot in Question." Ex. A-5 at 7.[1]  Therefore, Citi argues, its mortgage lien has priority over any assessment lien from the HOA.

Citi further argues that the HOA foreclosure did not extinguish Citi's superior lien, given Texas common law that the successful bidder at a foreclosure sale takes title subject to prior liens, that foreclosure does not terminate senior interests in the foreclosed real estate, and that the purchaser is charged with the primary liability for the payment of the prior mortgage and must service the prior liens to prevent loss of the property.  Motion at 5 (citing *Atu v. Slaughter*, Civ. A. No. 14-06-00771, 2007 WL 2682198, at *3 (Tex. App.–Houston [14th Dist.] Sept. 13, 2007, no pet.)).  Citi further notes that the language of the Trustee's Deed Following Foreclosure granting the property to DTND expressly states that the conveyance of the property is "subject to all exceptions of record and subject to each and every superior lien and encumbrance," meaning that Citi's lien remained intact. Accordingly, Citi argues, Plaintiff's suit to quiet title fails as a matter of law.

Plaintiff contends that section 209.011 of the Texas Property Code was amended in 2009 to give lienholders such as Citi a duty to redeem after a homeowners' association forecloses, and that it has supplanted the common-law rule regarding lien priority.  Thus, Plaintiff contends, by failing to redeem the property within the statutory redemption period, Citi lost all its interest in the property. Plaintiff argues that the statute contemplates a period for redemption by lienholders, and provides an absolute period for lienholders to redeem and maintain their priority lien, even limiting the purchaser's ability to sell its interest during the redemption priod.  Plaintiff argues that "[t]he change

---

[1] Citi asserts that the Court may consider documents relied on by Plaintiff in its Complaint as well as documents that are available in the public record without converting the motion to a motion for summary judgment.  Accordingly, Citi relies on certified copies of the original Warranty Deed and Deed of Trust executed by Smith, various assignments of those interests, the HOA Declaration, and the Trustee's Deed Following Foreclosure.  Plaintiff has not objected to the Court's consideration of any of these documents, all of which are in the public record.

in the statute was clearly made in order to force lienholders to pay homeowner's association fees and dues" and "[w]ithout such a change, neighbors of foreclosed properties would have to pay additional dues that the lienholders simply refused to pay by unnecessarily and unfairly waiting to file their foreclosure documents." Response at 4.

## Analysis

**A. Whether Citi lost its interest in the property by failing to redeem?**

Texas Property Code § 209.011 is entitled "Right of Redemption After Foreclosure." It states in relevant part:

> (b) The owner of property in a residential subdivision or a lienholder of record may redeem the property from any purchaser at a sale foreclosing a property owners' association's assessment lien not later than the 180th day after the date the association mails written notice of the sale to the owner and the lienholder under Section 209.010. A lienholder of record may not redeem the property as provided herein before 90 days after the date the association mails written notice of the sale to the lot owner and the lienholder under Section 209.010, and only if the lot owner has not previously redeemed.
>
> (c) A person who purchases property at a sale foreclosing a property owners' association's assessment lien may not transfer ownership of the property to a person other than a redeeming lot owner during the redemption period.
>
> (d) To redeem property purchased by the property owners' association at the foreclosure sale, the lot owner or lienholder must pay to the association:
>     (1) all amounts due the association at the time of the foreclosure sale;
>     (2) interest from the date of the foreclosure sale to the date of redemption on all amounts owed the association at the rate stated in the dedicatory instruments for delinquent assessments or, if no rate is stated, at an annual interest rate of 10 percent;
>     (3) costs incurred by the association in foreclosing the lien and conveying the property to the lot owner, including reasonable attorney's fees;
>     (4) any assessment levied against the property by the association after the date of the foreclosure sale;
>     (5) any reasonable cost incurred by the association, including mortgage payments and costs of repair, maintenance, and leasing of the property;

and

(6) the purchase price paid by the association at the foreclosure sale less any amounts due the association under Subdivision (1) that were satisfied out of foreclosure sale proceeds.

(e) To redeem property purchased at the foreclosure sale by a person other than the property owners' association, the lot owner or lienholder:
(1) must pay to the association:
(A) all amounts due the association at the time of the foreclosure sale less the foreclosure sales price received by the association from the purchaser;
(B) interest from the date of the foreclosure sale through the date of redemption on all amounts owed the association at the rate stated in the dedicatory instruments for delinquent assessments or, if no rate is stated, at an annual interest rate of 10 percent;
(C) costs incurred by the association in foreclosing the lien and conveying the property to the redeeming lot owner, including reasonable attorney's fees;
(D) any unpaid assessments levied against the property by the association after the date of the foreclosure sale; and
(E) taxable costs incurred in a proceeding brought under Subsection (a); and
(2) must pay to the person who purchased the property at the foreclosure sale:
(A) any assessments levied against the property by the association after the date of the foreclosure sale and paid by the purchaser;
(B) the purchase price paid by the purchaser at the foreclosure sale;
(C) the amount of the deed recording fee;
(D) the amount paid by the purchaser as ad valorem taxes, penalties, and interest on the property after the date of the foreclosure sale; and
(E) taxable costs incurred in a proceeding brought under Subsection (a).

(f) If a lot owner or lienholder redeems the property under this section, the purchaser of the property at foreclosure shall immediately execute and deliver to the redeeming party a deed transferring the property to the lot owner. If a purchaser fails to comply with this section, the lot owner or lienholder may file an action against the purchaser and may recover reasonable attorney's fees from the purchaser if the lot owner or the lienholder is the prevailing party in the action.

(g) If, before the expiration of the redemption period, the redeeming lot owner or lienholder fails to record the deed from the foreclosing purchaser or fails to record an

affidavit stating that the lot owner or lienholder has redeemed the property, the lot owner's or lienholder's right of redemption as against a bona fide purchaser or lender for value expires after the redemption period.

(h) The purchaser of the property at the foreclosure sale or a person to whom the person who purchased the property at the foreclosure sale transferred the property may presume conclusively that the lot owner or a lienholder did not redeem the property unless the lot owner or a lienholder files in the real property records of the county in which the property is located:
(1) a deed from the purchaser of the property at the foreclosure sale; or
(2) an affidavit that:
    (A) states that the property has been redeemed;
    (B) contains a legal description of the property; and
    (C) includes the name and mailing address of the person who redeemed the property.

...
(j) If a person other than the property owners' association is the purchaser at the foreclosure sale, before executing a deed transferring the property to the lot owner, the purchaser shall obtain an affidavit from the association or its authorized agent stating that all amounts owed the association under Subsection (e) have been paid. The association shall provide the purchaser with the affidavit not later than the 10th day after the date the association receives all amounts owed to the association under Subsection (e). Failure of a purchaser to comply with this subsection does not affect the validity of a redemption.

(k) Property that is redeemed remains subject to all liens and encumbrances on the property before foreclosure. Any lease entered into by the purchaser of property at a sale foreclosing an assessment lien of a property owners' association is subject to the right of redemption provided by this section and the lot owner's right to reoccupy the property immediately after redemption.

...
(n) After the redemption period and any extended redemption period provided by Subsection (m) expires without a redemption of the property, the association or third party foreclosure purchaser shall record an affidavit in the real property records of the county in which the property is located stating that the lot owner or a lienholder did not redeem the property during the redemption period or any extended redemption period.

(o) The association or the person who purchased the property at the foreclosure sale may file an affidavit in the real property records of the county in which the property is located that states the date the citation was served in a suit under Subsection (a) and

6

contains a legal description of the property. Any person may rely conclusively on the information contained in the affidavit.

(p) The rights of a lot owner and a lienholder under this section also apply if the sale of the lot owner's property is conducted by a constable or sheriff as provided by a judgment obtained by the property owners' association.

TEX. PROP. CODE § 209.011.   Section 209.011 was originally enacted in 2001 as part of Chapter 209, the Texas Residential Property Owners Protection Act.  The Act includes certain rights and protections for property owners subject to mandatory homeowner's associations, including a requirement for HOAs to provide notice of foreclosure to property owners and a right of redemption for property owners after foreclosure.

Section 209.011 was amended in 2009 by H.B. 3479, which provided a right of redemption for lienholders of record in addition to property owners.[2]  Plaintiff argues that this amendment was intended to "to force lienholders to pay homeowner's association fees and dues," and created a duty on the part of purchase money lienholders and other lienholders to redeem in order to preserve their interests in the property.  After reviewing the common law, the language of chapter 209 and section 209.011, and the legislative history, the Court concludes that Plaintiff's position lacks merit.

As Citi correctly points out, under Texas common law, foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed, and the successful bidder at a junior lien foreclosure takes title subject to the prior liens. *Conversion Properties, LLC v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.–Dallas 1999, pet. denied). Consequently, "[t]he purchaser takes the property charged with the primary liability for the payment of the prior mortgage and must

---

[2] Section 209.010 was also amended to require the HOA to send notice of the foreclosure sale to each lienholder of record and inform them of the right to redeem the property under section 209.011.  If the recorded instrument does not include an address for the lienholder, the association does not have a duty to notify the lienholder.

therefore service the prior liens to prevent loss of the property by foreclosure of the prior liens, . . . [and as] a practical matter, a prospective purchaser usually will subtract the amount of any outstanding senior liens from the fair market value of the property in calculating its foreclosure bid." *Id.*; *see also Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 95 (Tex. App.–Texarkana 2011, pet. denied); *Atu*, 2007 WL 2682198 at *3.

Applying this common-law rule, in *DiSanti v. Wachovia Bank, N.A.*, Civ. A. No. 2-08-330-CV, 2009 WL 1372970 (Tex. App.–Fort Worth May 14, 2009, pet. denied), the Fort Worth Court of Appeals held that DiSanti, a purchaser at an HOA foreclosure sale, took the property subject to the pre-existing vendor's lien held by Wachovia because he was not a bona fide purchaser. Rather, because DiSanti had at least constructive notice of the vendor's lien and deed of trust when he purchased the property at the foreclosure sale, he took the property subject to that superior lien.

Similarly, in *DiSanti v. Mortgage Electronic Registration Systems, Inc.*, Civ. A. No. 4:10-CV-103, 2010 WL 3338633 (E.D. Tex. Aug. 24, 2010), the Magistrate Judge concluded that claims similar to DTND's should be dismissed. The Magistrate Judge noted that "Plaintiff purchased the Property at an inferior loan foreclosure and took the Property subject to superior liens," and thus his quiet title claim should be dismissed for failure to allege that Plaintiff owned superior title to the property.

Plaintiff does not expressly argue that the HOA foreclosure sale extinguished superior liens on the property, nor could he reasonably do so, given that the deed he obtained from the HOA foreclosure sale expressly coveys the property "subject to all exceptions of record and subject to each and every superior lien and encumbrance, if any, and to the extent they are valid, existing, and affect[ing] the Property . . ." Ex. A-Rather, Plaintiff contends that Citi's superior lien was

extinguished by its failure to redeem after the foreclosure sale took place. Plaintiff argues that the 2009 amendments to § 209.011 were intended to create a duty to redeem in lienholders, and that Defendant's construction of the statute would render the amendments null and without effect. Plaintiff contends that because the statute provides that "[p]roperty that is redeemed remains subject to all liens and encumbrances on the property before foreclosure," Plaintiff argues that by implication property that is not redeemed is no longer subject to such liens. Thus, Plaintiff contends, because Citi failed to redeem, "it lost its interest in the property in the same manner the homeowner would have."

As an initial matter, the Court notes that the statute nowhere states that lienholders have a "duty" to redeem; rather, this section deals with a "right" to redeem.[3] Thus, a lienholder of record "*may* redeem" if the lot owner does not, and the purchaser at the HOA foreclosure sale may not transfer the property to another party during the redemption period. To redeem the property, the lienholder must pay amounts due to the HOA, as well as interest and costs, and pay the purchase price to the purchaser. If the lot owner or the lienholder redeems the property, the purchaser must immediately execute a deed transferring the property to the lot owner. This deed (or an affidavit stating that the property has been redeemed) must then be recorded before the expiration of the redemption period – if it is not, "the lot owner's or lienholder's right of redemption as against a bona fide purchaser or lender for value expires after the redemption period." TEX. PROP. CODE § 209.011(g). If no deed or affidavit is recorded, the purchaser at the foreclosure sale or a person to whom the purchaser transferred the property "may presume conclusively that the lot owner or a

---

[3] Judge Biery previously dismissed another of Plaintiff's lawsuits on the basis that Plaintiff purchased the property subject to a superior purchase money mortgage lien on the property, and "[t]here is no language in the statute which strips a priority lienholder of its right to foreclose or otherwise disturbs the longstanding law with respect to lien priority and foreclosure." *See DTND v. Wells Fargo*, Civ. A. No. SA:11-CV-1116-FB. Judge Biery further noted that the statute does not provide that, if a priority lienholder does not redeem the property, then it cannot foreclose on its senior lien, which was not eliminated by the HOA foreclosure. *Id.*

lienholder did not redeem the property." *Id.* § 209.011(h). If the property is not redeemed, the HOA or purchaser must record an affidavit stating that the property was not redeemed. *Id.* § 209.011(n).

Thus, although the statute provides certain consequences for failure to file the deed or an affidavit reflecting the redemption (limited to affecting the lienholder's rights as against a bona fide purchaser or lender for value), nowhere does it state that failure to redeem by a superior lienholder would extinguish the superior lien. The Legislature is presumed to know existing law when it enacts a statute. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Thus, it is presumed to know that superior lienholders retain their lien priority after foreclosure of a junior lien, and had it intended such an extreme consequence for the failure of superior lienholders to redeem, it presumably would have expressly so stated.

Plaintiff's arguments rely on the inaccurate premise that superior lienholders are in the same position as lot owners, who previously were the only parties with a right to redeem, and thus superior lienholders would lose their rights by failing to redeem, just as lot owners do. But a lot owner holds no liens, and a lot owner loses his interest in the property after foreclosure, subject to his right to redeem to regain his interest. Similarly, inferior lienholders may lose their interest, which is why section 209.0091 was recently added to require HOAs to provide notice and opportunity to cure the delinquency to *inferior/subordinate* lienholders *before* foreclosing.[4] But no such notice is required

---

[4] In the most recent legislative session, the Legislature added section 209.0091, which requires HOAs to provide notice of potential foreclosure to junior lienholders and give them an opportunity to cure. The House Research Organization's bill analysis states that supporters of the bill argued:
   If there is a superior lien on the property, such as a mortgage lien from a bank, then whoever purchases the foreclosed property does so subject to that lien. Superior lien holders are guaranteed payment from a foreclosure sale. A subordinate lien holder, however, could lose its interest in the property if a foreclosure sale did not generate enough funds to satisfy those interests.
   While most associations, in their restrictive covenants, establish assessment dues as subordinate liens, there are some that allow assessment dues to assume the status of superior liens. In these instances, subordinate lien holders may lose their interest without any knowledge that an association had initiated foreclosure proceedings. This is a particular problem in nonjudicial foreclosures, which do not entail formal court proceedings and are subject only to minimal notice

to superior lienholders – they are required to get notice only *after* foreclosure, and then only if their contact information is included in the recorded documents. It would be remarkable if the Legislature had created a duty to redeem with penalty of forfeiture of liens, but then required notice only if the address is located in the public record. Moreover, the failure to require pre-foreclosure notice with an opportunity to cure for superior lienholders indicates the Legislature's intent to preserve existing law regarding preservation of superior liens.

    Moreover, the legislative history bears out the fact that the 2009 amendments were intended to benefit all lienholders of record by creating a right of redemption, and not to require superior lienholders to redeem or forfeit their interests. The Bill Analysis for S.B. 2121, the language of which was incorporated into H.B. 3479 states that the bill "will help lenders maintain and protect their lien position, will permit homeowners' associations to be paid their assessments, and will protect the ownership interest of the owners, who may be able to work out a plan with their lender to stay in the home." Thus, the bill "authorizes a lienholder of record of property in a residential subdivision to redeem the property from any purchaser at a sale foreclosing a property owners' association's assessment lien not later than the 180th [day] after the date the association mails the written notice as required." House Bill Analysis, C.S.S.B. 2121. The House Research Organization bill analysis summarizes the subject of the bill as "allowing lienholders to redeem property owners' association foreclosures." Thus, the purpose of the bill was simply to *allow* lienholders to redeem the property

---

requirements.
    HB1228 would require HOAs to provide foreclosure notice to superior lien holders or to subordinate lien holders if the assessment lien was superior. This would allow those entities enough time to determine if they wished to take action to forestall an imminent foreclosure, such as by settling the delinquent dues.
    Opponents of the bill cited administrative burdens associated with notice requirements, and stated that "[s]uperior lien holders would, moreover, have little interest in receiving a foreclosure notice, since they almost always will recover their interest when the property is sold."
    HB1228 was passed, effective January 1, 2012.

by meeting the same requirements as the lot owner. *Id.* There is no mention in the legislative history of an intent to *require* superior lienholders to redeem or forfeit their liens. Thus, consistent with the statute's plain language, the legislative history indicates that section 209.011 gives a right to redeem as a benefit to lienholders, but does not create a duty with penalty of forfeiture upon failure to redeem.[5]

The fact that the statute says that "property that is redeemed remains subject to all liens and encumbrances on the property before foreclosure" does not mean that the converse is true for properties that are not redeemed. Importantly, that language was in the statute before the 2009 amendments granting lienholders a right to redeem, and thus could not have been intended to require superior lienholders to redeem or forfeit their liens. Rather, that language applies to inferior liens and encumbrances that may have been extinguished by the foreclosure but are reinstated after redemption.

In this case, the undisputed facts show that the HOA lien was subordinated to the mortgage lien, and thus the foreclosure did not extinguish Citi's superior lien. And, as a matter of law, Citi's

---

[5] Supporters of the bill also said that "[t]he bill would protect lot owners as well by requiring the deeds of trust be recorded in their name should the lienholder redeem the foreclosed property. The bill would benefit lienholders, lot owners, and property owners' associations, while discouraging speculators at foreclosure sales who prey on other parties with interest in a property." H.R.O. Bill Analysis of S.B. 2121 (5/20/2009). Although there is some language in the legislative history that could be read to support Plaintiff's position, such as that "the lender should be permitted to redeem the property, thereby paying the association and retaining its lien position," Senate Research Center Bill Analysis, C.S.S.B. (4/20/2009), this language does not require the conclusion that failure to pay would result in loss of lien position for superior lienholders. Even superior lienholders may remain vulnerable to loss of position if the property is not redeemed and is later sold to a bona fide purchaser (as recognized by § 209.011(g)). *See DiSanti*, 2009 WL 1372970 (evaluating claim that purchaser at HOA foreclosure sale was a bona fide purchaser who took property without being subject to prior claims). Thus, allowing superior lienholders to redeem helps them protect their lien position. Further, the right of redemption benefits all junior lienholders, including mortgage lienholders with junior liens. *See e.g.*, Bill Analysis of C.S.H.B. 2392 (81st Leg. Session, R.S.)("In many cases, the association lien is subordinated by restrictive covenants to a voluntary mortgage, but not in all cases and not for all voluntary liens. Since a defaulting owner is often absentee and the foreclosure is for a low dollar amount, the lender should be permitted to redeem the property, thereby paying the association and retaining its lien position."). Thus, the plain purpose of the 2009 amendments was to benefit associations by permitting redemption and to benefit lienholders by allowing them to redeem and retain their lien interests. Citi's construction of the statute is consistent with these purposes and does not render the amendments without effect, as Plaintiff contends.

lien was not extinguished by the failure to redeem. Accordingly, the Court concludes that Plaintiff's claim that Citi had no interest in the property to foreclose fails as a matter of law, and Citi's motion to dismiss this claim is granted.

**B. claims based on failure to send required notices**

Plaintiff contends that, in any event, it had a right to notice prior to foreclosure, and the failure to send such notice invalidates the substitute trustee's sale. The petition alleges that prior to its foreclosure sale, Citi "failed to send any notice of default, notice of acceleration, notice of right to cure or notice of foreclosure sale *to Plaintiff* per the requirements of the Deed of Trust signed by Daniel A. Smith or any other applicable state or federal guideline or statute." Petn. ¶ 12 (emphasis added). Citi contends that DTND was not entitled to pre-foreclosure notice.

Plaintiff argues that it received the right to notice from the Trustee's Deed Following Foreclosure issued after the HOA sale, which gave him all rights belonging to the property owner. However, Plaintiff's reliance on the deed following HOA foreclosure as giving it a right to notice is misplaced. The duties and notice requirements applicable to Citi are solely those contained in the Deed of Trust and applicable statutes.

Section 51.002(d) provides, "Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." TEX. PROP. CODE § 51.002(d). Once that 20-day notice period expires, notice of the sale must be given at least 21 days before the date of the sale and served "by certified mail on each debtor who, according to the records of the

mortgage servicer of the debt, is obligated to pay the debt." *Id.* § 51.002(b)(3).

With regard to notice of default and right to cure, the plain language of § 51.002(d) indicates that notice must be sent to "a debtor in default" under an instrument securing real property "used as the debtor's residence." *See Teachout v. Kitchen*, Civ. A. No. 14-03-00215-CV, 2004 WL 794383, at *2-3 (Tex. App.–Houston [14th Dist.] April 15, 2004, no pet.) (concluding that the Legislature intended section 51.002(d) to apply only to real property currently used as the debtor's residence). Plaintiff DTND has not alleged that it is a "debtor in default" on an instrument securing the property as its residence, such that it would be required to be sent notice under § 51.002(d). Nor has it alleged that it was a "debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt" such that it would be entitled to notice of sale pursuant to § 51.002(b)(3).

In *Rodriguez v. Ocwen Loan Servicing, Inc.*, 306 Fed. App'x 854 (5th Cir. 2009), the Fifth Circuit considered the notice due to a purchaser of property. The Fifth Circuit held that the plaintiff could not rely on § 51.002 as the source of a right to personal notice because he did not allege that he was a debtor according to the records of the mortgage servicer of the debt. *Id.* at 856. Further, the Fifth Circuit held, under Texas law there is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust. *Id.* (citing *Stanley v. CitiFinancial Mortgage Co.*, 121 S.W.3d 811, 817 (Tex. App.–Beaumont 2003, pet. denied)).[6] The plaintiff failed to allege that he was a party to the deed of trust or otherwise a "debtor" on the loan, and the Substitute Trustee's Deed attached to his petition listed only the sellers as debtors.[7]

---

[6] *See also American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975).

[7] The Fifth Circuit also rejected a claim of equitable right to notice based on the mortgagee's actual notice of his ownership interest, stating that the notification duty extends "'to the parties named on the requisite documents as the debtors, and not to other parties, *known or unknown*.'" *Id.* (quoting *Casstevens v. Smith*, 269 S.W.3d 222, 229-30 (Tex. App.–Texarkana 2008, pet. denied))(emphasis in original). Therefore, the court held, even if the mortgagee/mortgage

Plaintiff contends it is entitled to notice pursuant to the Deed of Trust. The Deed of Trust provides that all covenants and agreements in the Deed of Trust shall bind and benefit the "successors and assigns" of Lender and Borrower, subject to the provisions of paragraph 9(b). *Id.* ¶ 12. Defendant asserts that "Plaintiff is not an assignee or successor to the Note and Deed of Trust because when property is involuntarily sold pursuant to a lien on that property, as this Property was at the HOA foreclosure sale, the purchaser is not a 'heir, successor, assign or legal representative' to a party of any preexisting deed of trust upon the property." In support of this statement, Defendant cites *Mosby v. Post Oak Bank*, ___ S.W.3d ___, 2011 WL 6425696 (Tex. App.–Houston [14th Dist.] 2011, no pet.), in which the court of appeals held that similar language did not require the bank to give notice of the foreclosure to a purchaser at an execution sale. However, that opinion contains no analysis to support its conclusion. The court also rejected an argument that equity required such notice, finding it sufficient that the bank complied with section 51.002 of the Property Code, and concluding that invoking equitable principles would conflict with the statute. *Id.* at *4. In this case, there is no evidence that Defendant complied with section 51.002 of the Property Code. Thus, *Mosby* does not dispose of the issue. Similarly, although the cases discussed previously hold that an intervening purchaser is not entitled to notice of foreclosure, they did not expressly consider whether the intervening purchase would be a successor under the Deed of Trust.

Thus, the Court must consider the terms of the Deed of Trust. The Deed of Trust includes

---

servicer knew of the purchaser's interest in the property, Texas law imposed no requirement for it to provide notice to the purchaser under the circumstances. *See also Lawson v. Gibbs*, 591 S.W.2d 292, 295 (Tex. Civ. App.–Houston [14th Dist.] 1979, writ ref'd n.r.e.) ("Had Main Bank been aware that appellee Gibbs had purchased the property, such knowledge would have imposed no legal duty to give Gibbs notice of the sale."). Similarly, in *U.S. Bank N.A. v. Farhi*, Civ. A. No. 05-07-01539, 2009 WL 2414484 (Tex. App.–Dallas Aug. 7, 2009, no pet.), the court of appeals found no authority supporting the proposition that a mortgagee bank was required to provide notice to an intervening purchaser of the mortgaged property before foreclosure. Thus, Plaintiff's argument that its deed was recorded and thus Citi knew or should have known that Plaintiff had acquired rights in the property does not confer upon it a right to notice.

covenants and agreements between the "Borrower," defined as Daniel A. Smith, and the Lender. It provides that the Lender may accelerate the debt (require immediate payment in full of all sums secured by the Deed of Trust) if Borrower defaults or if there is a sale without credit approval. Deed of Trust ¶ 9. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by law. *Id.* ¶ 18. "If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to the sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner described by applicable law." Paragraph 13 also provides that notices shall be directed to the property address or any other address designated by the Borrower by notice to the lender. Deed of Trust ¶ 13.

As noted, the Deed of Trust states that the covenants and agreements of the Deed of Trust "shall bind and benefit the successors and assigns of Lender and Borrower, <u>subject to the provisions of paragraph 9(b).</u>"[8] (Emphasis added.) Paragraph 9(a) provides that the Lender "may" require immediate payment in full if the Borrower defaults. Paragraph 9(b) requires the Lender to do so upon a sale without credit approval. Specifically, paragraph 9(b) provides that "Lender shall, if permitted by applicable law . . . and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if: (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary." *Id.* ¶ 9(b). Thus, a

---

[8]The Deed of Trust does not define "successors."

purchaser in a sale without credit approval would not appear to be a successor bound by or entitled to the benefits of the Deed of Trust. Rather, the Deed of Trust requires the Lender to accelerate the loan upon such a sale, and upon doing so the Lender may invoke the power of sale. The Deed of Trust then requires the Lender to give notice of sale "to Borrower." Deed of Trust ¶ 18. Other provisions in the Deed of Trust refer to "Borrower's Successor in Interest," *see* ¶ 12, indicating that notice of the sale was intended to be given to the original Borrower, and not a purchaser without credit approval. The Deed of Trust is not a model of clarity, however.

Even assuming that Plaintiff is a "successor" or "assign" of Smith under the Deed of Trust such that he would be entitled to notice, Plaintiff fails to specifically plead a violation of the notice requirements of the Deed of Trust. Though Plaintiff asserts in its response that it was in possession of the property at the time the Lender should have given notice and no notice was ever sent to the property, the Deed of Trust requires that notice be sent to the property address or any other address designated by the Borrower by notice to the lender via first class mail, and Plaintiff has not alleged that notice was not sent to another address designated by the Borrower pursuant to the Deed of Trust.

Thus, Plaintiff has not alleged sufficient facts to plausibly show that it was entitled to any pre-foreclosure notice or that, even if it was entitled to notice, Citi failed to comply with the notice requirements of the Deed of Trust or the Property Code.[9]

---

[9] Plaintiff also contends that Citi is not a "Lender" as defined by the Deed of Trust and thus "any foreclosure taken by CITI wherein notice was not provided by the 'Lender' as provided in the Deed of Trust is improper and should be voided." However, the recorded assignments show that Cornerstone assigned its interests in the Note and accompanying security instruments to MERS, and then MERS assigned all beneficial interest and all rights under the Deed of Trust to Citi. Though Citi is not the named "Lender" in the Deed of Trust, it is a successor and assignee of the Lender pursuant to the Deed of Trust (*see* ¶ 12), and thus notice from Citi would be sufficient to comply with the Deed of Trust. To the extent Plaintiff claims that any notice sent by Citi is insufficient because it was not the Lender, that claim fails.

**Conclusion**

For the reasons stated herein, Defendant Citi's Motion to Dismiss (docket no. 4) is GRANTED. However, Plaintiff is given leave to file an Amended Complaint to attempt to state a claim. If Plaintiff wishes to file an Amended Complaint, it must do so no later than **May 25, 2012**. Failure to file an amended complaint by that date or to request an extension of time to do so will result in a final dismissal of this case.

It is so ORDERED.

SIGNED this 15th day of May, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE